Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington on behalf of Mr. McReynolds. And I will be trying to resolve, reserve five minutes of my time. Just watch the clock, Counsel. Thank you. We are arguing that there were numerous errors made in sentencing. I'd like to discuss primarily two of them, the first being acceptance of responsibility, or lack thereof, and the second being departing upward on criminal history. And essentially, in discussing Judge Quackenbush's decision not to grant acceptance of responsibility, we believe that there were fundamentally two errors committed there. The first was in determining that Mr. McReynolds, as a factual matter, did not accept responsibility. Let's ask and at a review on that. Clear error, Your Honor. And the second being that once that determination was made, a legal error where he assumed that any lack of acceptance would suffice to deny the acceptance of responsibility points. Repeat the last. That once he made the factual determination that there was some lack of candor, that any lack of candor on any point, material or otherwise, would defeat the acceptance of responsibility. So we believe there was a legal error as well as a factual error. Now, so what case do you rely upon to support your argument that there was legal error in determining that any lack of candor can support the denial of acceptance of responsibility? What's your strongest case to support that argument? Your Honor, I think there are several. Give me your strongest one. Well, I would say that in United States v. Eiler, which we cited in our brief, and in United States v. Gonzalez, both of which are Ninth Circuit cases, they discussed that there are limitations to acceptance of responsibility and that, in essence, so long as a defendant admits the act that he's charged with and as long as he admits sort of the relevant conduct that would apply to that act, that he has provided acceptance of responsibility. And our argument is that in this case, Judge Krakenbush essentially raised two issues and that those issues really related to motive, i.e., whether or not he made some money off of this deal, and essentially an immaterial point, which was precisely where the first drug dealer dropped off the drugs to Mr. McReynolds. If I recall the record correctly, is this the one where Mr. McReynolds was saying that somebody left the drugs with him to deliver to somebody else and he was never the person that was going to sell the drugs, but someone got remorse about being a drug dealer and left the drugs with him? That's correct, Your Honor. The judge was entitled to say this is a far-fetched story. I don't believe that was the extent of your involvement. Why wouldn't that be within the judge's discretion to say this story makes no sense and he's not really taking responsibility for the fact that this was his heroin and he was going to sell it? What's wrong with that? Essentially, I would categorize Mr. McReynolds' statement, which I believe is found in ER 148 to 166, as saying he was the middleman and he said essentially the version that he gave was that he was a middleman between what I would say the upper-level dealer and a lower-level dealer. The lower-level dealer told him that he was stopped by an officer while he was holding the drugs, that that scared him, he didn't want any more part of this, that he gave the drugs back to Mr. McReynolds, that Mr. McReynolds was holding the drugs and that the upper-level dealer was going to come to his house. So if the judge didn't believe that, if the judge believed that Mr. McReynolds had bought the drugs himself and was going to sell them, why couldn't the judge say, well, you weren't completely candid about your level of involvement and therefore I don't give you the benefit of acceptance of responsibility reduction? Your Honor, my answer to that would be I suppose that if there was some evidence before Judge Quackenbush that there was a different version of events, that might be a different case. But if the judge doesn't believe the version of events that's positive, that's within his discretion to say, I don't believe you and I don't think you've accepted responsibility. I don't think that there's a case that says that the judge has to credit the version of events that's given by the defendant. Your Honor, I would agree that there is no case that says one strictly has to accept what a defendant says. But in this case, there's a complete absence of any evidence to the contrary. Mr. McReynolds, when he was arrested initially on these charges, gave a statement to the police officer in which he stated essentially the same version of events. Well, the fact that the drugs were in a safe in his home is pretty powerful evidence that they were his. It's pretty powerful evidence that they were in his possession. And he admitted to that upon his arrest. And that the amount that was there was for sale as opposed to for personal use. And so the judge can use his experience and knowledge of prior cases to make the connection candid. Your Honor, again, if there were some evidence to the contrary, I would agree. But otherwise, the judge is merely speculating as to what may have occurred. Circumstantial evidence. But Mr. McReynolds freely admitted that those drugs were for sale. He simply said, I wasn't the one selling them. But the judge could make an opposite inference. If this case went to trial, the very same evidence could be presented to the jury and the jury could make a determination that your client had those drugs for sale himself. If that same story were presented to the jury, the jury could reject that story and determine that Mr. McReynolds had the drugs for sale himself. So why is it error for the court to make that same inference? Your Honor, I would agree that a jury could certainly reject that. But I think that feeds into our second argument in regard to this, which is legally that isn't really part of the acceptance of responsibility rubric. But before you go there, let me ask a question to follow up on what the judge is asking about. If I understand your position, then if a defendant comes in and pleads guilty, he's automatically entitled to get acceptance of responsibility at two levels under 3E1.1A. No, Your Honor. Okay, so then the judge has a role. Absolutely. And in this case, Judge Quackenbush told everybody at the beginning of the hearing, I've got a real problem with this guy's credibility because I think he had these drugs and he was selling them and he actually went through quite a discussion of what prompted him to have those thoughts. So I don't understand why Judge Quackenbush can't make that determination that you haven't accepted responsibility because you're saying, I just happened to be there and some poor guy came out of a Walgreens, I think, and just said, gee, I'm frightened by the police. I'm going to give you my heroin to hold for me. And that's what he did. He's just a good guy. Your Honor, I think that in essence our position is that if there were contradictory evidence somewhere, that that would be a legitimate determination. But if there is no contradictory evidence and Judge Quackenbush is simply speculating that I don't find this truthful, that's where we believe that becomes problematic. But I would also point out that our argument is, under the cases, Eiler, Gonzalez, et cetera, that I've cited, that even if Judge Quackenbush believed that Mr. McReynolds was making money off of these transactions, which he said he was not, that that fact ultimately relates to what's stated in the case law as motive or other items that are irrelevant. He admitted the elements of the offense. He admitted that he possessed the heroin. He admitted that the heroin was to be distributed. He lied about how he got it. He told one story to the police at the time he was arrested, and he told another story to the court. Isn't the judge permitted to interpret that contradiction and reach a reasonable conclusion that, well, maybe we're not getting the full story here? You're right. We also contest, and it was contested heavily by Mr. Peven at sentencing, the whole question as to whether he lied to the officer or not. And I believe that was one of the other problems, is that there was a report. There's two inconsistent statements, one to the officer and one in court. One is probably not true. Does it matter which one is true? We would argue that the discrepancy was minor enough that the answer would be no, but we would also contest the reliability of the report in that the report was taken by a statement by Mr. McReynolds while he was sitting in the back of a police car with a six-inch crack in the window by an officer who didn't record the statement. And it appears that there may have been some confusion in the officer's brief report, which states that the drug dealer dropped it off at Mr. McReynolds' house in order to pick it up and was going to pick it up later. And in reality, there were, in fact, two drug dealers, and the position argued at sentencing was simply that the officer got it wrong. Hadn't Mr. McReynolds sold drugs to a confidential informant like a week before all of this took place? Yes, that was count one. I know, but why isn't Judge Quackenbush entitled to take into consideration all of the facts that he knows? I mean, Judge Rawlinson points out if this went to a jury, you'd get that instruction that says you can believe everything a witness says, you can believe some of it, or you can ignore all of it. And then there's a list of seven criteria that a jury can consider. It seems to me when you go through those criteria, that's what Judge Quackenbush says. I don't believe what you're telling me, and you haven't accepted responsibility. Understood, Your Honor. And, again, our position is that even if Judge Quackenbush made that determination, those were about matters that didn't relate to the acceptance of responsibility under the guidelines. So, counsel, even the case you cited, Eiler, says that in order to receive the acceptance of responsibility reduction, the defendant must give complete information regarding his participation in the crime. So why wasn't Judge Quackenbush entitled to rely on the fact that, in his view, the defendant didn't give complete information? Your Honor, our position, again, would be that he gave as complete information as he could. It was a lengthy recitation, and that, in essence, there was no evidence to the contrary. From his perspective, but wasn't the judge entitled to have a different perspective on whether or not the information was complete? I think if there was a reasonable evidence in the record to indicate that it was not, that would be the case. Otherwise, our position is that it was merely speculation. I do want to move to the criminal history category, if that's okay with Your Honors. And I won't belabor the point. We've set forth in our brief that Judge Quackenbush, at ER 220, stated very clearly on the record that he was considering everything in the pre-sentence report in making this determination. He used the word everything. And I've set forth, and I won't belabor the point now, that there were numerous categories that were bare arrest records, that were charges that never resulted in convictions. And while I would agree with the position that in certain cases a judge is allowed to consider Arrests? Arrests? Non-convicted conduct. In this case, several of the records I think you've agreed that that includes arrests. I would agree that it can consider arrests. But in this case, several of the arrests were simply a statement that he was arrested because there were no reports provided regarding any of those factors. That was one category. Another category were arrests that didn't lead to convictions. And while I understand Your Honor's point, I would argue that in those cases, the arrests that didn't lead to convictions, they were not situations, for example, where somebody enters into a global resolution of multiple cases. Even if you take those out, even if you take out the bare mention of arrests, there was significant criminal history here to support Judge Quackenbush's decision, wasn't there? Your Honor, our position is that there was not. That there was double counting involved because there were several cases that were, or at least one case, I believe maybe two, that were listed under one county that were then transferred to another county where he was convicted, and that went into his criminal history points. Judge Quackenbush stated he was considering everything. He made that very clear from the... This is a very experienced judge, and if he says he considers everything, that doesn't necessarily mean that he double counted. There's nothing in the record to indicate that he double counted or that he inappropriately considered criminal history points. So just as you argued there's no evidence to the contrary regarding your client, there's no evidence in this record that Judge Quackenbush did anything inappropriate. Your Honor, having appeared in front of Judge Quackenbush numerous times, I would say I take him at his word. When he says he considered everything, that he considered everything. And in pages 221 to 223, he specifically engages Mr. Peven in a discussion and says, in essence, I can consider arrest. Right, that's right. That's a correct statement of the law. You take him at his word when he says in 31 years, this is one of the worst records I've ever seen, and it doesn't meet a Category 3 in my view, it's Category 4? I take him at his record that that was his opinion. I also believe that there were legal errors involved. I'm going to try to reserve the remainder of my time. You may do so, Counsel. We'll hear from the government. May it please the Court, Counsel, my name is Tyler Tornabene and I represent the United States in this matter. Excuse me, Counsel, would you give us your name again? Tyler Tornabene. All right, I don't seem to have it on my list, but that's all right. I see it now. All right, Tornabene, excuse me. Thank you. Yes, Your Honor, I filed a Notice of Appearance recently. I had the previous list, I'm sorry. Go ahead, Mr. Tornabene. Thank you. I'll take up first with the issue of the acceptance of responsibility. The Defense Counsel states repeatedly that if there was any evidence to the contrary of what the defendant stated, that that would essentially undercut his entire position. And this Court, I think through its questions, has pointed out, frankly, quite a bit of evidence that's on the record that contradicts the defendant's far-fetched story. That would include, I think the most obvious is that six days prior, the defendant sold heroin to a CI in the amount of $2,500. And yet, in the defendant's allocution, he states that he did not on that day or on any day engage in selling of drugs. That's a very important issue. The defense spends a lot of time about saying, well, these are immaterial issues. And, in fact, that's not an immaterial issue at all. To the defense's first point, whether or not it was clear error to make that factual finding that the defendant was not credible, not only is there the deal going on six days prior, but when the defendant is arrested, he has $1,300 in cash on his person, and there's over $8,000 in the safe with the 245 grams of heroin. This is clearly sufficient indicia of engaging in the business of drug dealing. Certainly, there was evidence the defendant's story would be to the contrary. There were some statements provided by family members to attempt to explain some of the cash. The judge was certainly within his purview to reject those and use, frankly, his common sense and reasonableness and his experience in determining that that just simply was not credible and that the defendant, going on to the legal issue, had not shouldered his burden of proving clear acceptance of responsibility. Now, the defense cited in terms of the strongest cases for his position, and I'll transition now into sort of the legal issue of the ultimate finding that there was no acceptance of responsibility. Mr. Campbell points to the Eiler case and the Gonzalez case. The Eiler case is really an opposite to what this court is looking at. The Eiler case involved that third point on the acceptance of responsibility. That is almost something that's automatic when certain conditions are met, the most important being the initial two-point reduction for clear acceptance of responsibility. Eiler dealt with whether or not that third point should have been awarded to the defendant or not. So it's really not helpful in this case. Gonzalez pointed to, I think accurately by the defendant, as really his strongest case on the legal issue. And that is, I think, an issue that needs to be addressed in some detail here. In Gonzalez, that case involved a customs official who pleaded guilty to taking through a port. At sentencing, the defendant stated that he had done so basically to help save the life of a friend and prevent that person from harm. The sentencing court rejected that story and did not award acceptance of responsibility. On appeal, the Ninth Circuit said that, well, there was no foundation for that finding. And, in fact, in looking at that case, that was a very sound holding by this court in that really all the court in that case pointed to was some timing issues of when the defendant said what he said. And really I think a fair reading of that case is that there wasn't an evolution in terms of truth or making up stories by the defendant. There was simply a statement that was then more detail was added to. And there was no real evidence on the other side at all. That is obviously unlike this case where we have significant evidence showing that the defendant is engaging in the business of dealing drugs and yet is saying to the contrary that he's not. The Gonzalez case went on to say, and this has been repeated in some subsequent cases, that it's not relevant to take into consideration a defendant's motive in acceptance of responsibility. Those cases, Gonzalez being chief among them, focused on the idea that that is not an issue when looking at relevant conduct and whether or not a defendant has sufficiently admitted to relevant conduct. In this case, the issue really isn't about, in terms of whether or not the defendant engaged in the business of drug dealing. The issue is not really, strictly speaking, about motive or relevant conduct. It's about actual contrition. It's about whether or not the defendant came forward and fully admitted to a moral wrongdoing. And this case is, in that respect, much more analogous to the case cited by the United States, U.S. v. Conley, which this court in particular is very familiar with. In that case, the defendant was not granted a downward departure for acceptance of responsibility in a bank fraud type case because his theory of the case, the defendant's, was that the reason he did it was sort of a Robin Hood kind of story. The court, the sentencing court, rejected that, did not award the acceptance of responsibility, and that determination was upheld on appeal on the idea that that went to whether or not the defendant in that case had a full and complete acceptance of responsibility and really accepted the moral wrongdoing of what he had done. Here, the defense claims that whatever lies or lack of credibility the defendant had were on immaterial or minor points, and that's simply not accurate. Where the defendant was found to be not credible goes to the heart of whether or not the defendant fully accepted moral responsibility for what he had done. Clearly, if the defendant's story were to be believed, he's not very morally culpable at all. He simply, I think as this court pointed out, was a nice guy and was assisting a drug dealer who himself wanted to get out of dealing drugs, who was going to the hospital, and was simply trying to facilitate that. That is not a morally culpable person, although that person, in this case the defendants, would have technically been guilty of possession with intent to distribute. That's a completely different animal than a person who is possessing with intent to distribute, not just in the technical legal sense, but also in the traditional, normal sense of trying to make a profit through dealing drugs. And that's what the defendant denied. And that denial was found to be not credible. That was certainly not clear error by the court, and it goes to the heart of whether or not he had a full acceptance of responsibility. So that was not clear error, and this court should not remand. I'll touch very briefly on the criminal history issue. The defense points to the portion of the record where Judge Quackenbush states that he looked at everything and, I believe, tries to paint that as something potentially improper and then sort of lists, well, what is everything? This court really should just simply look to the written order on sentencing by Judge Quackenbush. I believe that's in the record at ER 13. I believe it may be ER 11. But in any event, in that order, the judge clearly states that he is not considering anything such as dismissals. He's simply not considering dismissed criminal conduct. What he is considering, and what weighed heavily for the sentencing court, was the fact that between 1993 and 1998, the defendant had seven felony convictions, and those seven felony convictions only resulted in three of the defendant's six criminal history points. The judge looked at that, and the judge looked at another very important part of the record that the defense does not mention. But in his written record, the court focused in part on the fact that the defendant himself has stated that he had committed quite a bit of conduct for which he had not been charged. And, in fact, that is in the record. The judge's portion of the order is at Excerpt of Record 13, and the portion of the record that he's alluding to, that the judge is alluding to, is where the defendant states at page 265 of the Excerpt of Record, quote, I've done a lot of bad things. A lot. I'm not even charged with half the crap I've told. That's a very significant statement. And certainly, when we're looking at a situation where Judge Quackenbush looked at that statement, looked at the number of criminal convictions, was not satisfied that the defendant's criminal history sufficiently reflected a Category 3 and was more in line with a Category 4. And so the judge departed by adding one criminal history point to make that a Category 4. Certainly that is not abuse of discretion under these facts. Unless the court has any questions, I would have nothing more to add. No further questions, Counsel. Thank you. Mr. Campbell, you have some reserve time. Thank you, Your Honor. Not a lot. Very briefly, I wanted to touch on the idea about moral responsibility, and we cited to the United States v. Vance, which states, the factual inquiry required by the guidelines does not require a penetrating judicial examination of the criminal's soul. There is no particular social purpose to be served by lenience toward those who crime more easily or who have sufficient criminal experience to display sentiment at sentencing instead of restraining their emotions in public. I don't think that moral responsibility has any bearing on this point. And in regard to what the government just said about the criminal history matter, in Judge Quackenbush's order, which is at ER 13, specifically at line 12, it states that Mr. McReynolds' innumerable criminal history charges, he's clearly referring to non-convictions, and then if you look at lines 14 through 16, it states many of the criminal charges against Mr. McReynolds were for various reasons, in some instances after conviction and sentencing, dismissed. I think that makes it clear that he was considering matters beyond just convictions, in spite of what the government just stated. I realize I'm over time. Unless there are questions, I'll sit. No. No questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Molloy, O'scannlain, Rawlinson